UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| JAMES E. SHELTON | ) | |
| | ) | |
| V. | ) | NO. 2:11-CV-107 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, following the denial of the plaintiff's application for Supplemental Security Income under the Social Security Act following a hearing before the Administrative Law Judge. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 9 and 11].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 48 years old when he filed his application, and 50, by 11 days, at the time of his administrative hearing. He has a high school education. Plaintiff has past relevant work experience as a heavy equipment operator, which is semi-skilled and requires medium exertion; as a tractor-trailer truck driver, which is also semi-skilled and medium; as an oven operator, which is also semi-skilled and medium; a spray painter, also semi skilled and medium; and as a fork lift operator, likewise semi-skilled and medium. (Tr. 19). There is no dispute that he cannot return to any of his past relevant jobs.

Plaintiff had previously filed applications for both Disability Insurance Benefits and SSI, which were denied by a different ALJ on April 23, 2009. (Tr. 65). No issue has been raised regarding the previous denial, and that decision was affirmed by the Appeals Council and was not judicially appealed.

Plaintiff's medical history is summarized by the plaintiff in his brief as follows:

> Plaintiff received occasional treatment at Bulls Gap Medical Center from July 26, 2001 through September 13, 2005, due to nervousness, back pain, cellulitis/gingivitis, and tooth decay (Tr. 216-225).
> Plaintiff has received treatment at Laughlin Memorial Hospital. On July 2, 2006, Plaintiff presented with complaints of neck pain and right shoulder pain following a motor vehicle accident. Right shoulder x-rays showed hypertrophic changes of the acromioclavicular joint and cervical spine x-rays showed extensive degenerative changes. CT scan of the cervical spine revealed extensive degenerative changes and decrease in heights of the C5-C6 and C6-C7 intervertebral discs. The conclusion was spondylosis with degenerative disc disease (Tr. 240-246). On September 25, 2008, Plaintiff presented with complaints of severe recurrent back pain. CT scans of the cervical and thoracic spines revealed intervertebral disc ossification at T10-T11; mild

to moderate degenerative changes of the intervertebral disc spaces of the mid and lower thoracic spine; moderate narrowing of the intervertebral disc space at L3-L4; evidence of broad-based disc bulging versus disc herniation at L3-L4 and L4-L5; moderate facet hypertrophy between L3-L4, L5-S1 with evidence of mild central canal stenosis at L3-L4 and L4-L5; and moderate degenerative changes of the sacroiliac joints (Tr. 226-239).

Plaintiff underwent MRI of the cervical spine on January 13, 2009, due to neck pain radiating to both upper extremities with upper extremity numbness and weakness. Findings included mild straightening of the normal lordosis; an osteophyte/disc complex at C5-C6 resulting in a mild degree of central canal stenosis, with a mild degree of bilateral neural foraminal stenosis secondary to uncinate process hypertrophy; and an osteophyte/disc complex at C6-C7 resulting in a mild degree of central canal stenosis, with a mild degree of bilateral neural foraminal stenosis secondary to uncinate process hypertrophy, somewhat worse on the right. The impression was spondylosis at C5-C6 and C6-C6 and prominence of adenoid tissue (Tr. 247-248).

Plaintiff underwent consultative exam by Dr. Marianne E. Filka on October 1, 2009. Presenting problems included low back pain radiating into the lower extremities, bilateral shoulder pain, neck pain radiating into the upper extremities, chronic knee pain, and intermittent swelling of the feet and hands. Review of systems was positive for hearing difficulty, tooth pain, neck stiffness and pain, swelling of the feet and ankles, pain in joints, neck and back pain, numbness, weakness, difficulty walking and gripping, pain in muscles, and poor sleep. Exam was remarkable for some mild osteoarthritis changes in the fine finger joints; tightness in the muscles on the right paravertebral area and adjacent to the scapulovertebral border; decreased range of motion in the shoulders; tenderness into the right AC joint; tenderness in all the soft tissues of the back from the cervical all the way down to the lumbar, more prominent in the cervical and lumbar soft tissues; tenderness in the lumbar area in the SI and LS joints; decreased lumbar range of motion; and difficulty with posture changes.

The diagnoses were chronic cervical, thoracic, and lumbar pain, with bilateral low extremity radicular pain to the knees and in the upper extremity to the wrist; degenerative arthritis; chronic arthralgias to the knees; stated swelling of hands and feet that is intermittent with no findings on exam; tobaccoism; and remote history of marijuana use. Dr. Filka opined Plaintiff would be limited to a sedentary light duty job; he should be where he could go from sitting to standing to walking as needed for comfort; he should not be doing repetitive bending, squatting, stooping, kneeling, or climbing; he should not be working any chronic neck flexed or neck extended position; he should not be lifting, pushing, or pulling more than 30 pounds; he could lift, push, or pull up to 20 pounds on a repetitive, but occasionally lifting only up to 30 pounds; and he should not drive heavy vibrating equipments (Tr. 249-254).

On October 22, 2009, a reviewing state agency psychologist opined Plaintiff does not have a severe mental impairment(s) (Tr. 255-268). On December 8, 2009, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; should be allowed to change positions from sitting to standing at his option for comfort; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps

3

and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to vibration and hazards (machinery, heights, etc.) (Tr. 273-281). On January 10, 2010, a second reviewing state agency physician affirmed this assessment as written (Tr. 282).

Plaintiff received treatment at the Washington County Health Department from December 12, 2008 through June 2, 2010. Conditions and complaints addressed include severe back pain, chronic neck pain, leg pain, bilateral shoulder pain, decreased hearing, degenerative arthritis, enlarged prostate, decreased grip strength, bilateral foot pain, and hemorrhoids (Tr. 283-298, 306-310). On March 10, 2010, MRI of Plaintiff's lumbar spine revealed loss of normal lordotic curve; desiccation, disc space narrowing, broad-based disc bulging, and minor central canal stenosis at L3-L4; and a disc bulge at L4-L5 with what appeared to be a left paracentral disc protrusion, causing mild left lateral recess stenosis and mild central canal stenosis (Tr. 301-303, 309-310).

[Doc. 10, pgs. 2-4].

At the administrative hearing, the ALJ took the testimony of Dr. Norman Hankins, a Vocational Expert ["VE"]. The ALJ first asked Dr. Hankins to assess the exertional and vocational requirements of the plaintiff's past relevant jobs. (39-40). He then asked Dr. Hankins if the plaintiff could do those past relevant jobs if the ALJ found that the plaintiff "is capable of light work with sit/stand every 30 minutes to relieve pain and discomfort with no climbing of ladders, ropes or scaffolds, no more than occasional climbing of rams and stairs, no more than occasional balancing, stooping, kneeling, crouching or crawling. Further assume that he cannot have any concentrated exposure to vibration or hazards, and finally assume that he cannot perform any work that requires ...prolonged flexion/extension of his neck." (Tr. 40). Dr. Hankins opined that he would not. (Tr. 41).

The ALJ then asked Dr. Hankins to assume those same limitations in a person of plaintiff's age and education. He then asked the VE if there were jobs that person could perform, Dr. Hankins said there would be. He stated "I think they would tend to be factory jobs where he could work at a bench or a table, a work station that would mean sitting and

4

standing. Examples of the kind of job that would be within these limits would be jobs such as hand packers and packagers, inspectors, testers, sorters, sanders and weighers. Another category is miscellaneous assemblers and fabricators. Another one is handcutters and trimmers, and another example [INAUDIBLE], papers and finishers. That's not exhaustive but that's a good cross section of the kinds of job titles that would be within his limits." He then stated that there were 24,000 such jobs in Tennessee and 2.4 million in the nation. (Tr. 41-42).

He was then asked by plaintiff's counsel to "assume the same criteria as set forth in hypothetical number one, but we add to the sit/stand option also the need to walk around. If you add that, and that would, of course, being out of a certain work station, how, if at all, would that impact the type of jobs identified." Dr. Hankins opined that this "would prevent his being able to perform the kinds of jobs that I described because those jobs were set up so that they have two breaks...and a 30 minute lunch break. And other than that these production jobs they couldn't walk away and leave their station, so I think that would eliminate all the jobs." (Tr. 42-43).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease and osteoarthritis. (Tr. 15). He then found that he had the exact same residual functional capacity ["RFC'] for "less than a full range of light work," with a "sit stand option every 30 minutes to relieve pain and discomfort" as set forth above in his question to the VE. (Tr. 16). He reviewed the objective medical evidence, including the opinion of Dr. Filka. He found Dr. Filka's opinion to be "generally consistent" with his RFC finding. (Tr. 17). He assigned "great weight" to the State Agency physicians and

5

psychological evaluators. He also assigned "great weight to the opinion" of Dr. Filka "who determined that the claimant is capable of performing exertional activities consistent with a reduced range of light exertion. The conclusion as submitted by the examiner are consistent with the residual functional capacity as herein assigned." (Tr. 18).

Based upon the hypothetical question by the ALJ to Dr. Hankins and his response, the ALJ found that there were a significant number of jobs which the plaintiff could perform with the limitations set forth therein. Accordingly, he found that the plaintiff was not disabled. (Tr. 19-20).

Plaintiff asserts two arguments. First, he claims that the ALJ did not give appropriate weight to the opinion of Dr. Filka, and that the ALJ did not explain why he did not include the "walk as needed" portion of Dr. Filka's opinion in his RFC and question to the VE. Second, he asserts that the ALJ erred in not finding the plaintiff disabled under Rule 201.14 of 20 CFR Ch. III, Pt. 404, Subpt. P, App. 2 [the "Grid"], which states that such a finding is appropriate where a person who is closely approaching advanced age (age 50-54) with a high school education and no transferrable skills.

With respect to both arguments, plaintiff asserts "it is not for the court to parse through the record to determine for itself whether there is evidence from which the court, had it been the initial arbiter, could have found to support a conclusion." [Doc. 10, pgs. 8 and 11-12]. Rather, the ALJ's hearing decision should be the sole yardstick used in judicial review regardless of what the evidence in the record would show if the Court had been the "initial arbiter."

The Court of course agrees that the ALJ should explain the steps taken and evidence

6

evaluated in reaching his or her decision, and that he or she is bound by the rulings and regulations of the Social Security Administration and case law, unless a discovered error is harmless. Likewise, it is not the function of judicial review for the Court to do the ALJ's job for him or her, but to look for substantial evidence, and a fair adjudication in accordance with the law.

As for the "parsing" concern, this Court always *first* familiarizes itself with the ALJ's decision, the medical records and assessments, and the questions asked of the VE *before* reading the brief of either party. This method of analysis enables the Court to find any obvious errors which may be present in the Commissioner's analysis, and at times unearths points which, more often than not, benefit the plaintiff. In all cases, it enables the Court to better understand the arguments raised by the parties in their respective filings, such as those presented in the well-written briefs of counsel for both parties in this appeal.

In this particular case, the Court noticed in its customary initial review that the ALJ found an RFC for a reduced range of light work which afforded the plaintiff "a sit/stand option every 30 minutes to relieve pain and discomfort." It contrasted this with Dr. Filka's opinion that the plaintiff "should be where he could go from sitting to standing to walking as needed for comfort...," and with the State Agency physician's opinion that plaintiff "should be allowed to change positions from sitting to standing at his option for comfort...," which says nothing about only being allowed to do so only every 30 minutes, but at will. However, in reading Dr. Hankins' testimony, the Court notes that he identifies jobs which have "a work station that would mean sitting and standing...," which the Court interprets as being totally in line with an unfettered sit/stand option, as opined by the State Agency

7

physician.

Dr. Filka did say that the plaintiff should be allowed to go from sitting to standing to walking as plaintiff desired. However, the Court does not interpret this as implying that Dr. Filka meant he must be at liberty to walk a considerable distance, or even away from his work station. Even if that were not the case, the State Agency physicians clearly required only a sit/stand option. Jobs that could be performed in either position were those which the VE identified. If the ALJ erred in finding that plaintiff should only have to be allowed to alternate between sitting and standing every 30 minutes, such error is harmless in light of Dr. Hankins' testimony.

In this regard, also gleaned as a part of the Court's review of the record, State Agency Physician Juliao stated that "significant change," either improvement or worsening, did **not** occur between the date of the previous ALJ's decision on April 23, 2009, and the time Dr. Juliao reviewed the record on December 8, 2009, in conjunction with the present application. (Tr. 270). Thus, there was substantial evidence to have found that the plaintiff had the same RFC as found in the prior adjudication.[Tr. 61], which had no "every 30 minute" requirement. While the ALJ did not so find, it diminishes any argument that his failure to have done so overtly prejudices the plaintiff.

With respect to the plaintiff's second argument, that the ALJ erred in not finding plaintiff disabled under Grid rule 201.14, and that it is impossible to tell whether the jobs identified by the VE were sedentary or light, the ALJ led off his hypothetical question with "if I find the claimant is capable of *light* work...," followed by the various limiting factors. Light work means a greater lifting and handling capacity than sedentary. The fact the

8

plaintiff has other restrictions, even restrictions on considerable walking which is a requirement for being capable of the full range of light work, does not transform his exertional status to sedentary work. It means he can only do a reduced range of *light* work. The Court accepts that Dr. Hankins knows the exertional requirements of light work. If Rule 202.14, dealing with light work, also necessitated a finding of "disabled," then the Court would agree that the VE should not have even been consulted. But Rule 202.14 indicates a finding of "not disabled." There simply is substantial evidence that plaintiff's RFC exceeds the sedentary level.

The Court finds that there was substantial evidence to support the VE's testimony that there are a substantial number of jobs which the plaintiff can perform, and thus the ALJ's ultimate finding that the plaintiff was not disabled. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 9] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 11] be GRANTED.[1]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

9

Case 2:11-cv-00107-JRG-DHI   Document 13   Filed 01/24/12   Page 9 of 9   PageID #: 82